UNITED STATES DISTRICT
COURT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER P. KAUDERS, LEE C.S. KAUDERS, AND HANNAH KAUDERS, <br><br> PLAINTIFFS <br><br> v. <br><br> UBER TECHNOLOGIES, INC. and RASIER LLC, <br><br> DEFENDANTS. | CIVIL ACTION NO. 1:16-cv-11659-FDS |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND DISMISS OR,
IN THE ALTERNATIVE, STAY PROCEEDINGS</u>**

Uber Technologies, Inc. ("Uber") and Rasier LLC (collectively, "Uber") respectfully submit this memorandum in support of their Motion to Compel Arbitration and Dismiss, or in the Alternative, to Stay Proceedings pending resolution of arbitration, pursuant to the Federal Arbitration Act. As set forth below, this matter is governed by an arbitration agreement that a judge in this District already deemed to be valid and enforceable. The Court must, therefore, enforce the Parties' agreements and compel this matter to arbitration.

**I.     INTRODUCTION**

Plaintiff Christopher Kauders ("Mr. Kauders") is legally blind and uses a Seeing Eye dog ("service dog"). Mr. Kauders alleges that third-party transportation providers who he connected with using Uber's mobile software application failed to accommodate his service dog. Mr. Kauders claims that these incidents violated the Massachusetts anti-discrimination statute (M.G.L. ch. 151B) and the consumer protection statute (M.G.L. ch. 93A) and amounted to the intentional infliction of emotional distress ("IIED"). Plaintiff Lee C.S. Kauders ("Lee

Kauders"), Mr. Kauders' wife, and Plaintiff Hannah S. Kauders ("Hannah Kauders"), Mr. Kauders' daughter, witnessed one of the alleged incidents and, based on that single event, bring IIED and M.G.L. ch. 93A claims.

Plaintiffs bring this action in the wrong forum, however. As detailed herein, Mr. Kauders and Lee Kauders both entered into contracts with Uber that contained arbitration provisions requiring them to arbitrate any disputes arising from their use of Uber's software application. Judge Woodlock, from this District, has already reviewed this arbitration provision and found it valid and enforceable.[1] As such, Mr. Kauders and Lee Kauders must arbitrate their disputes. Plaintiff Hannah Kauders' claim should also be sent to arbitration, as it arises from the same incident as her parents' claims. Alternatively, Hannah Kauders' claim should be stayed pending arbitration of her parents' dispute.

## II. PLAINTIFFS' CONTRACTS WITH UBER

### A. Plaintiffs Agreed To Uber's Terms And Conditions.

Uber is a technology company that connects riders with third-party transportation providers. Declaration of Paul-Phillip Holden ("Holden Decl.") ¶ 3. Using Uber's technology platform (the "Uber App"), riders request transportation services from their smartphones (e.g., an iPhone); these requests are then transmitted to independent transportation providers looking for riders in the area. *Id.* Rasier, LLC ("Rasier"), Uber's wholly owned subsidiary, contracts with transportation providers to furnish them access to the Uber App. Holden Decl. ¶ 4.

***Before*** riders can request transportation services using the Uber App, they must create an Uber account and accept Uber's Terms & Conditions. Holden Decl. ¶ 7. Riders cannot create an Uber account without affirmatively accepting Uber's Terms & Conditions. Holden Decl. ¶ 10.

Uber's rider registration process is simple and straightforward. It involves three basic steps, each of which is confined to a single screen on the user's smartphone, with no scrolling

---

[1] *See Cullinane v. Uber Tech., Inc.*, No. CV 14-14750-DPW, 2016 WL 3751652 (D. Mass. July 11, 2016) (Woodlock, J.).

required: (1) Create an Account; (2) Create a Profile; and (3) Link Payment. Holden Decl. ¶ 10, Ex. A.

In the "Create an Account" step/screen, prospective riders enter their email address, mobile phone number, and a chosen password. Holden Decl. ¶ 10, Ex. A, Page 1. The prospective riders must then hit the "Next" button at the top right of the screen to move to the next step. *Id*. In the "Create a Profile" step/screen, prospective riders enter their first and last names. The prospective riders must then hit the "Next" button to move to the next and final step. Holden Decl. ¶ 10, Ex. A, Page 2. The screenshots below depict the "Create an Account" and "Create a Profile" steps:




        Exhibit A, Page 1                      Exhibit A, Page 2

Finally, in the "Link Payment" step/screen, prospective riders can either scan or enter their credit card information. As shown below, prospective riders are informed on the same screen that: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy." The words "Terms & Conditions and Privacy Policy" are a hyperlink that directs the rider to a screen with two links: one to Uber's Terms & Conditions and a second to Uber's Privacy Policy. Holden Decl. ¶ 10. The rider can view either document by clicking on the appropriate link. *Id*. Upon entering their payment information, riders create their Uber account by clicking the "DONE" button on the top left corner. Holden Decl. ¶ 10, Ex. A, Page 3. Prospective riders cannot complete the registration process via the Uber App without completing all three screens and clicking the "DONE" button on the final screen. *Id*. The following is a screenshot of the "Link Payment" step, which (1) expressly states that riders will be bound by the Terms & Conditions and Privacy Policy by creating an Uber account; and (2) provides the hyperlink to view Uber's Terms & Conditions and Privacy Policy:



**Exhibit A, Page 3**

Mr. Kauders and Lee Kauders both created Uber accounts following these general steps, which required acceptance of Uber's Terms & Conditions. Mr. Kauders created his account on June 27, 2014. Holden Decl. ¶ 8; Compl. ¶ 10. Lee Kauders created her account on May 13, 2015. Holden Decl. ¶ 11. Accordingly, Mr. Kauders and Lee Kauders are bound by Uber's Terms and Conditions, including its mandatory arbitration provision.

> **B.     By Agreeing To Uber's Terms & Conditions, Plaintiffs Accepted The Arbitration Agreement.**

The Terms & Conditions in place on June 27, 2014, when Mr. Kauders created his account, included the following arbitration provision (hereinafter the "Arbitration Agreement"):

> **Dispute Resolution**
>
> You and Company agree that any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively "**Disputes**")[2] will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Company are each waiving the right to trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding.**
>
> . . .
>
> Arbitration Rules and Governing Law.  The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and the

---

[2] The terms "Service" and "Application" are defined in the Terms & Conditions as follows: "By using or receiving any services supplied to you by the Company (collectively, the 'Service'), and downloading, installing or using any associated application supplied by the Company which purpose is to enable you to use the Service (collectively, the 'Application'), **you hereby expressly acknowledge and agree to be bound by the terms and conditions of the Agreement**, and any future amendments and additions to this Agreement as published from time to time at https://www.uber.com/terms (/web/20140905032202/https://www.uber.com/terms) or through the Service."  (emphasis added).

> Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") then in effect, except as modified by this "Dispute Resolution" section. (The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879). The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

Ex. A to Michael Cianfrani Declaration ("Cianfrani Decl.") (emphasis in original). In later versions of the Terms and Conditions, including the version agreed to by Lee Kauders on May 13, 2015, there have been slight modifications to the language but no material changes to the Arbitration Agreement. *Compare* Exs. B and C to Cianfrani Decl.

### III. LEGAL ARGUMENT

#### A. The Federal Arbitration Act Strongly Favors Enforcement of Arbitration Agreements.

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), the Federal Arbitration Act ("FAA") declares a liberal policy favoring the enforcement of arbitration policies, stating such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress sought to overcome "widespread judicial hostility to the enforcement of arbitration agreements." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that FAA was enacted "[t]o overcome judicial resistance to arbitration"). As the First Circuit has made clear, "federal law undeniably includes a policy favoring arbitration." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 148 (1st Cir. 1998) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration").

The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 22 (1983). In this regard, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### B. Consistent With Controlling Law And This Court's Recent Holding, Uber's Arbitration Agreement Must Be Enforced.

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, only two "gateway" issues should be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute at issue. *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Parties may delegate the determination of these gateway issues to the arbitrator rather than the court. Where parties so delegate, it is the arbitrator and not the court that determines whether the "gateway" issues have been satisfied. <u>Consistent with the reasons set forth below, this Court has already determined the Arbitration Agreements at issue here are valid and that issues regarding arbitrability and defenses to arbitrability should be left to the arbitrator.</u> *See Cullinane*, 2016 WL 3751652.

### C. Plaintiffs Delegated Questions Of Arbitrability To The Arbitrator.

As an initial matter, before evaluating the gateway issues, the Court must examine the underlying contract to determine whether the parties agreed to commit the threshold question of arbitrability to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional

7

arbitration agreement just as it does on any other."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006). "[W]here the parties have themselves clearly and unmistakably agreed that the arbitrator should decide whether an issue is arbitrable, the Supreme Court has held that this issue is to be decided by the arbitrator." *Awuah v. Coverall North America, Inc.*, 554 F.3d 7, 10-11 (1st Cir. 2009) ("*Awuah I*").

Here, the Arbitration Agreement provides "any dispute, claim or controversy arising out of or relating to this Agreement or the … interpretation or validity thereof … will be settled by binding arbitration." Exs. A, B, and C to Cianfrani Decl. The Arbitration Agreement also incorporates the Rules of the American Arbitration Association ("AAA"), which provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* American Arbitration Association Rules and Mediation Procedures Rule 7(a) (2013). In *Cullinane*, this Court examined whether the Arbitration Agreement at issue here deferred issues of arbitrability to the arbitrator. Citing *Awuah I*, Judge Woodlock held that "[w]here arbitration agreements unmistakably incorporate AAA rules (in particular Rule 7(a)), it is left to the arbitrator to decide what issues are arbitrable, and further, to decide such defenses to arbitration clauses unconscionability." *Cullinane*, 2016 WL 4203412, at *9. As such, whether the claims are arbitrable and any defenses to arbitrability, including any questions of formation, the scope of the Arbitration Agreement, and any other defenses to arbitration that Plaintiffs might raise must be deferred to the arbitrator.

**D.     The Gateway Issues Under the FAA Have Been Satisfied**

Even if the Court, rather than the arbitrator, were to evaluate the enforceability and interpretation of the Arbitration Agreement, both of the "gateway" issues have been satisfied here; thus, Plaintiffs' claims should be compelled to arbitration.

8

### 1. There is a Valid Agreement to Arbitrate.

"When deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 42 (1st Cir. 2012) ("*Awuah II*"). "[A]n offer is 'the manifestation of willingness to enter into a bargain made in such a way as to justify the other person in understanding that his assent will conclude the agreement.'" *Bulldog Investors Gen. Partnership v. Sec'y of the Commonwealth*, 457 Mass. 210, 220 n.12 (2010) (quoting *I&R Mech. Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455 (2004)). Acceptance occurs, and a contract is created, when the offeree assents in the manner invited or required by the offer. *See* Restatement (Second) of Contracts § 50(1); *Hobbs v. Massasoit Whip Co.*, 158 Mass. 194, 197 (1893) (Holmes, J.) ("[C]onduct which imports acceptance or assent is acceptance or assent in the view of the law, whatever may have been the actual state of mind of the party . . . .").

Here, Uber offered the use of its App to Mr. Kauders and Lee Kauders **only** upon the condition that they assent to Uber's Terms & Conditions.[3] The Uber registration process is clear, simple and unequivocal. On the final screen, prospective riders are advised "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy." *See* Holden Decl. ¶ 10, Ex. A. The "Terms & Conditions" and "Privacy Policy" are hyperlinks to the full text of those documents. *Id.* That Plaintiffs may have chosen not to view those terms and conditions, or that Plaintiffs were not "required" to view them, makes no difference under the law; it is sufficient that they were provided with the opportunity to do so. *See, e.g., Cullinane,* 2016 WL 3751652, at *8 (holding whether parties actually read Uber Terms and Conditions is irrelevant, as "[a] test requiring a showing by the offeror of actual notice of the offeree. . . would, through the

---

[3] As a wholly-owned subsidiary of Uber, Rasier, LLC has full enforcement rights of the Arbitration Agreement, and Plaintiffs' claims as they apply to this entity are equally subject to mandatory arbitration. *See* Holden Decl. ¶ 4; *Sourcing Unlimited, Inc. v. Asimco Intern., Inc.*, 526 F.3d 38, 47 (1st Cir. 2008) (allowing parent company's subsidiary to enforce an arbitration agreement against the plaintiff even though the plaintiff and the parent company were the only signators).

imposition of such transactions costs for the contract validation process, make otherwise legally compliant arbitration agreements for online contracts all but impossible to enforce."); *see also, Awuah II*, 703 F.3d at 44 (A party to a written agreement "is bound by its terms whether he [or she] reads and understands them or not," and the law "does not impose a special notice requirement upon agreements containing arbitration clauses.").

Importantly, Judge Woodlock Court recently found the agreement at issue here enforceable. In *Cullinane*, the court held that plaintiffs, by clicking the "Done" button to complete the registration process within the Uber App, entered into an enforceable contract. *See Cullinane*, 2016 WL 3751652, at *8.[4] In doing so, the Court rejected plaintiffs' claims that they did not receive proper notice of the arbitration provisions, holding that presenting the Terms & Conditions via a hyperlink, the *same* hyperlink presented to Mr. Kauders and Lee Kauders, was sufficient to place a reasonable consumer on notice of their contractual obligations. *Id.* at 7. The Court concluded that the plaintiffs were therefore bound by the terms and provisions of Uber's arbitration agreement. *Id.* at 10; *see also, Bekele v. Lyft, Inc.*, No. CV 15-11650-FDS, 2016 WL

---

[4] Consistent with basic principles of contract formation, courts nationwide have likewise enforced agreements containing clear notice to the consumer that future use is subject to terms accessible by hyperlink, and where the consumer must make an affirmative "click" before any further use. *See Defillipis v. Dell Fin. Servs.*, No. 3:14-CV-00115, 2016 WL 394003, at *10 (M.D. Pa. Jan. 29, 2016) (compelling arbitration where "[p]laintiff had notice of the Agreement's terms and [ ] she manifested assent by clicking the associated box."); *Whitt v. Prosper Funding, LLC*, No. 1:15-cv-136-GHW, 2015 WL 425062, at *9 (S.D.N.Y. July 14, 2015) (noting the absence of any legal authority "indicating that a reasonably prudent website user lacks sufficient notice of terms of an agreement that are viewable through a conspicuous hyperlink"); *Ranazzi v. Amazon.Com, Inc.*, 2015-Ohio-4411, 46 N.E.3d 213, 217 (Ohio Ct. App. 2015) ("[m]ultiple courts have held that clicking is an acceptable method to manifest assent to the terms of an agreement"); *Nicosia v. Amazon.com, Inc.*, No. 14-4513, 2015 WL 500180, at *5 (E.D.N.Y. Feb. 4, 2015) (compelling arbitration where online Amazon customer placed order and website stated that, "[b]y placing your order, you agree to Amazon.com's privacy, notice and conditions of use," which were reachable by a hyperlink on the same webpage); *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497 (LLS), 2014 U.S. Dist. LEXIS 58006, at ** 2-9 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause contained in hyperlinked Terms of Membership, where sign-up box notified user that "By joining Gilt through email or Facebook sign-up, you agree to the Terms of Membership for all Gilt Group sites" and user provided email address and clicked "Shop Now," even though user had not read terms); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 911-12 (N.D. Cal. 2011) (enforcing arbitration clause contained in hyperlinked Terms of Service, where initial screen stated below "Allow" or "Accepted" button that "By using YoVille, you also agree to the YoVille Terms of Service" and user clicked button, but no evidence that plaintiffs actually viewed terms).

4203412, at *8 (D. Mass. Aug. 9, 2016) (Saylor, J.) (*citing Cullinane* and compelling arbitration based on users' online acceptance of defendant's terms and conditions of service). Here, just like the Plaintiffs in *Cullinane*, Mr. Kauders and Lee Kauders clicked the "Done" button to complete the registration process thereby agreeing to the Terms and Conditions. *See* Holden Decl. ¶ 10, Ex. A. Accordingly, they are bound by the Arbitration Agreement.

Plaintiff Hannah Kauders is likewise bound. Massachusetts courts have held that, where non-signatories to arbitration agreements derive direct benefits from the signatories of such agreements, the non-signatories are likewise bound and must arbitrate their claims. *See Machado v. System4 LLC*, 471 Mass. 204, 209-210 (2015) ("[C]ourts have recognized six theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) equitable estoppel, and (6) third-party beneficiary."). Such is the case here, as Hannah Kauders' claims derive directly from her witnessing and participating in Mr. Kauders' attempt to secure a ride with a transportation provider who Mr. Kauders connected with through the Uber App. Specifically, Hannah Kauders asserts she was present during a December 30, 2015 incident when a transportation provider was unwilling to transport Mr. Kauders' service dog. Compl. ¶ 33. During the incident, Hannah Kauders allegedly intervened on Mr. Kauders' behalf and, speaking to the transportation provider in his native language, attempted to convince the transportation provider to allow the service dog. Compl. ¶ 49. Hannah Kauders alleges that her inability to convince the transportation provider to allow the service dog was difficult and frustrating for her and caused her to suffer emotional distress. *Id*. Without Mr. Kauders' agreement to Uber's Terms and Conditions, including the Arbitration Agreement, he could not have sought a ride through the Uber App, and Hannah Kauders would have no basis for her claims. Simply stated, Hannah Kauders cannot both rely on Mr. Kauders' agreement with Uber to provide services in support of

her claims, while also argue that the same agreement is unenforceable. As such, Hannah Kauders is subject to the Arbitration Agreement and her claims should be compelled to arbitration. Even if Hannah Kauders' claims were not subject to arbitration, the FAA requires the Court to stay her claims pending arbitration of Mr. Kauders and Lee Kauders' claims:

> If any suit or proceeding be brought in any of the courts of the United States ***upon any issue referable to arbitration under an agreement in writing for such arbitration***, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall on application of one of the parties stay the trial of the action until such arbitration has been had*** in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

### 2. Plaintiffs' Claims Fall Within The Scope Of The Arbitration Agreement.

Even if the Court, rather than the arbitrator, were to evaluate the arbitrability of Plaintiffs' claims, it is clear that the gateway issues have been satisfied and Plaintiffs should be compelled to arbitrate their claims.

Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[W]here language of an arbitration clause is broad and in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, at 8 (1st Cir. 2014) (internal quotation marks omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

The Arbitration Agreement here is broad and includes any "dispute, claim or controversy arising out of or relating to this Agreement . . . or the use of the Service" Exs. A, B and C to Cianfrani Decl. Here, Mr. Kauders claims he was denied "use of the Service" by third-party transportation providers whom he connected with using the Uber App based on the presence of his service dog. The claims of Lee and Hannah Kauders center around witnessing one such denial of service and Hannah Kauders' attempt to convince the transportation provider to accept the service dog. Thus, Plaintiffs' claims unquestionably "aris[e] out of or relat[e]" to Uber's services. Moreover, because the Terms & Conditions contain no provision that ***excludes*** the claims from arbitration, Plaintiffs cannot overcome the presumption of arbitrability. *See Grand Wireless*, 748 F.3d at 8-9 (holding that plaintiff failed to rebut the presumption of arbitrability because it "needed to show that the parties intended to exclude this type of dispute from the scope of the arbitration clause, not merely that the arbitration clause lacked explicit language covering" the claims) (internal citation omitted)). In short, whether determined by the Court or an arbitrator, the Arbitration Agreement here is broad enough to encompass Plaintiffs' claims and Plaintiffs should be compelled to arbitrate.

## IV. CONCLUSION

There is no dispute that Mr. Kauders and Lee Kauders created Uber accounts, signifying their assent to Uber's Terms & Conditions, and then used the Uber App pursuant to their agreements with Uber. Hannah Kauders' claims are wholly derivative of her father's, which rest squarely on his contractual relationship with Uber. Because Uber's Terms and Conditions include an agreement to arbitrate any claims arising from the use of the Uber App, Uber

13

respectfully requests that the Court compel Plaintiffs to arbitrate their claims and dismiss or, in the alternative, stay any claims the Court determines are not subject to arbitration.

Respectfully submitted,

**UBER TECHNOLOGIES, INC. AND RASIER LLC**

By their attorneys,

/s/ Carie A. Torrence
Carie A. Torrence (BBO #675237)
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA 02110
Phone 617.378.6000
Fax 617.737.0052
ctorrence@littler.com

Dated: September 9, 2016

## CERTIFICATE OF SERVICE

I, Carie A. Torrence, hereby certify that on this 9th day of September, 2016, the foregoing Notice of Removal was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ Carie A. Torrence
Carie A. Torrence